# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3718 | **DATE** | 3/12/2002 |
| **CASE TITLE** | Malone vs. Pipefitters' Assoc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 4/12/02 at 10:00 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The court denies the summary judgment motions by defendant, the Pipefitters' Association, Local Union 597, in part and the plaintiff Lawrence B. Malone in whole. Defendant's motion is granted on Malone's failure to promote claim. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 13 2002 | |
| | Notified counsel by telephone. | | date docketed | 98 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/12/2002 | |
| | | | date mailed notice | |
| rs | courtroom deputy's initials | Date/time received in central Clerk's Office | rs6 mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LAWRENCE B. MALONE, )
    Plaintiff, )
)
v. ) 97 C 3718
)
PIPEFITTERS' ASSOCIATION, )
LOCAL UNION 597, )
    Defendant. )

DOCKETED
MAR 1 3 2002

## MEMORANDUM OPINION AND ORDER

**BLANCHE M. MANNING, District Judge:**

Plaintiff Lawrence Malone has filed this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 (c), alleging that defendant Pipefitters' Association Local 597 (the "union") engaged in a pattern and practice of promoting a hostile working environment against Malone on the basis of his race.

On July 29, 1998, the court denied the union's motion to dismiss for failure to state a claim. Specifically, the court held that Malone's complaint satisfactorily alleged that the union was liable for intentionally promoting a pervasive atmosphere of discrimination. The parties now bring cross-motions for summary judgment. For the following reasons, the union's motion is denied in part and Malone's motion is denied.

I. *Standard for Ruling on a Motion for Summary Judgment*

Because the consequences of summary judgment are so severe, courts "must always guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Kincaid v. Vail*, 969 F.2d 594, 598-99 (7th Cir.1992) (citing *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir.1980)). Thus, courts do not hold pro se

litigants to the same stringent standards as formally trained attorneys, and the technical rigor of summary judgment procedures is inappropriate. *Kincaid,* 969 F.2d at 600. Accordingly, the court will not hold Malone to the same technical requirements to which it holds parties represented by counsel.

Nevertheless, the court still holds Malone to the same substantive standards as other civil litigants when it considers the motion for summary judgment. *Id.* at 599. Thus, as the party who ultimately bears the burden of proof on a particular issue, Plaintiff may avoid summary judgment only if he affirmatively demonstrates, by specific factual allegations, that there is a genuine issue of material fact requiring a trial. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986). Furthermore, Plaintiff "should not be allowed to proceed with a case on the mere hope that trial would produce the evidence he was unable to garner at the stage of summary judgment." *Parker v. Federal Nat'l Mortgage Ass'n*, 741 F.2d 975, 980 (7th Cir.1984). Thus, even though Malone is not held to the same rigors as formally trained attorneys, summary judgment is proper if he makes no factual allegations to support his claims.

## II. *Background*

The following facts are taken from the parties' briefs, depositions, exhibits, and other documentary evidence submitted to the court. Malone alleges a racially hostile work environment at the Robbins Resource Recovery Facility in Robbins, Illinois ("Robbins"). He contends that the union is responsible for instigating and promoting the racially hostile atmosphere there by permitting the portable toilets on the site to be used as a forum for racially-derisive written commentary.

The union is a labor union with several thousand members and represents pipefitters and welders in Northeastern Illinois and Northwestern Indiana. Malone is African-American and a member of the union who worked at the Robbins site from November 1995 until June 26, 1996, when he was terminated. Foster Wheeler Constructors, Inc., ("Foster Wheeler") constructed the mechanical portion of the Robbins site. Foster Wheeler and the union entered into a collective bargaining agreement ("CBA") which governed the pipefitting staffing at Robbins. The CBA provided, in relevant part, that: "[t]he employer shall have the' sole and exclusive responsibility for hiring, . . . . shall have the sole discretion to classify, and to determine the duties and responsibilities of the Supervisory Personnel," and "shall classify such Supervisory Personnel . . . as [Foster Wheeler] deems necessary for proper supervision of the work."

Pursuant to the CBA., Steve Toth, the union's business agent, worked with Foster Wheeler for placement of supervisory personnel. To that end, he submitted to James Roach, Foster Wheeler's labor relations manager, at least four resumes for the piping superintendent position. Roach in turn submitted the resumes to Les Jordan, Foster Wheeler's project superintendent in charge of placing "direct hires" or, the workers who actually built the Robbins structure.

From these resumes, Jordan selected Dennis Hahney to be the piping superintendent. According to Hahney, his duties were to hire pipe fitters from the union as needed by Foster Wheeler and to "make sure everything runs smooth between the company and the pipe fitters." Hahney hired Malone for the Robbins site according to the union's hiring hall system and Foster Wheeler reserved the "sole and exclusive

3

right" of placing applicants. Foster Wheeler paid the employees and retained the right to terminate the workers for cause.

The portable toilets at the Robbins site were paid for and furnished by Foster Wheeler. Racially-derisive remarks were scrawled on the walls of most of the toilets, including remarks about African-Americans which did not refer directly to Malone. Malone stated that he did not know who wrote the graffiti, but speculated that someone from the union was responsible. Malone also testified about the existence of a Ku Klux Klan poster on the site, but could not remember actually seeing it. He further testified that he saw a lynch rope at the site, but did not know who placed it or what it represented. Malone testified that, before he was terminated, he never complained to anyone at Foster Wheeler or the union about the graffiti, the poster, or the rope.

Hahney testified that he saw the graffiti as soon as he arrived at Robbins in 1995. He received the first complaint about the graffiti and the noose on July 10, 1996, from James Ferguson, an African-American union member who worked at the Robbins facility. Hahney relayed the complaint to Toth, and in August of 1996, Hahney instructed workers at the site not to write on the toilets and had the existing graffiti painted over. These events occurred shortly after Malone was terminated in June of 1996.

III. *Discussion*

A. **Did the Union Promote A Hostile Work Environment?**

In its order denying the union's motion to dismiss, this court held that the union may incur Title VII liability if Malone could "show that the union intentionally promoted a

pervasive atmosphere of discrimination." *Malone v. Pipefitters' Ass'n, Local 597*, 1998 WL 433765 *2 (N.D. Ill. July 29, 1998). Therefore, to survive summary judgment, Malone must present the court with evidence that shows the union intentionally promoted the racist climate at the Robbins facility. *Reed v. Int'l Union of UAW*, 945 F.2d 198, 203 (7th Cir. 1991); *Souter v. Int'l Union of UAW*, 993 F.2d 595 (7th Cir. 1991); *Cole v. Appalachian Power Co.*, 1995 WL 370400 at *3 (S.D.W.Va. 1995).

The existence of a racist work atmosphere is not imputed to a labor union absent a showing that the union instigated, supported, ratified, or encouraged the conduct. *Id.; Souter*, 993 F.2d at 599. In *Souter*, the plaintiff, who was African-American, sued his labor union for a breach of duty under section 301 of Labor Management Relations Act. He submitted evidence of racially-derisive graffiti on the walls of the automobile plant where he worked and contended that "a racist atmosphere pervaded the [plant] and contributed to hostile attitudes on the part of the union." *Id.* The Seventh Circuit held that "[w]ithout doubt, the [graffiti is] repugnant. But Souter offered no evidence linking this graffiti to his treatment by the union . . ." *citing Reed*, 945 F.2d at 203. Therefore, it is insufficient for Malone to simply establish that the Robbins site contained deplorable instances of racism. As this court stated when it denied the union's motion to dismiss, Malone must also establish that the union "intentionally promoted a pervasive atmosphere of discrimination." *Id.* at 203.

Malone has submitted a transcript of a January 7, 1992 membership meeting delivered by Francis McCartin, a union business manager. McCartin referred to the speech as a "state-of-the- union" message. Malone argues that this speech, made

more than three years before he worked at the Robbins site, reveals the union's racist convictions behind what eventually occurred there. In his speech, McCartin addressed the union's general business as well as letters from anonymous union members. He also complained about minority members who were upset with the union for what they perceived as unequal opportunities and the union's prejudices against them. For example, he read one demand from a letter: "Apologize for derogatory remarks made against minority members," and in response, replied "never," to applause from the audience. On the issue of the union's minority membership, McCartin's speech alternated between vituperative and tolerant. He laments that African-American members benefit from a double-standard when disciplined because the union dare not risk charges of discrimination. He also implies that the union hall is not as nice a place or as safe as it was since African-Americans became members. At other points in the speech, he praises the ideal that all members of the union should be treated and considered equal. At all points, the transcript describes an approving audience, which applauded at frequent intervals. For certain, McCartin's speech casts a dubious light on the caliber of union leadership with respect to its African-American members.

From any perspective, what remains from reading McCartin's speech is the factual issue of whether the union's leadership generated or fostered racial animus against its African-American members. The union has offered no authority for their argument that the temporal separation between the time the speech was made and when the graffiti appeared on the toilets at the Robbins site bars Malone from raising this evidence in support of his claim.

Malone has been unable to present evidence which suggests that defendant union members were actually responsible for writing the graffiti on the toilets at the Robbins site or for any of the other racist conduct there. Principally, he faults the union, especially Hahney, for failing to respond to it. Further, Malone argues that Toth, who regularly visited the Robbins site and used the toilets, should have been more attuned to the hostile atmosphere that African-American members were forced to endure.

The union argues that Foster Wheeler was responsible for the conditions at the site and are solely to blame for the graffiti at the site. Further, the union argues that once Ferguson apprized Hahney of the racist material at the site, he went on the offensive and had the toilets painted over and also spoke with his staff. Therein lies the contradiction. On the one hand, the union pleads helplessness and/or excusable indifference to protest the atmosphere at Robbins since Foster Wheeler was exclusively in control of the site. On the other hand, the union trumpets its effectiveness at remedying the situation once it became involved on behalf of Ferguson. Given the insight into the union's leadership we have from reading McCartin's speech and what it suggests about the prevailing view of African-American members, Malone should have an opportunity to present evidence before a trier of fact that the union "instigated, supported, ratified or encouraged" the wrongful conduct that occurred at Robbins. *Id.* at 203-04; citing, *Carbon Fuel Co. v. United Mine Workers of America,* 444 U.S. 212, 218, 100 S.Ct. 410, 414 (1979).

### B. Failure to Promote Claims

Malone also alleges that the union failed to promote him to a foreman position at the Robbins site. This claim fails. First, as stated above, the CBA gave Foster Wheeler exclusive power to hire employees and the "sole discretion to classify, and to determine the duties and responsibilities of the supervisory personnel." It also provided that Foster Wheeler "shall classify such supervisory personnel (General Superintendent, General Foreman, Foreman)." Therefore, it was not within the union's power to promote Malone.

Secondly and most importantly, Malone testified that he never asked anyone at Foster Wheeler for a promotion who was in a position to entertain such a request. It was on this basis that Judge Bucklo dismissed Malone's failure-to-promote claims against Foster Wheeler in *Malone v. Foster Wheeler Constructors, Inc.,* 97 C 3804. To establish a prima facie failure to promote claim, a plaintiff must show: (1) that he is a member of a protected group, (2) he *applied for* and was qualified for the position in question, (3) he was rejected for the position, and (4) those who were promoted had similar or lesser qualifications. *Pafford v. Herman,* 148 F.3d 658, 669 (7th Cir. 1998)(emphasis added). By Malone's admission, he does not state a claim for a failure-to-promote charge because he never applied for the position.

8

### *Conclusion*

For the foregoing reasons, the court DENIES the summary judgment motions by defendant, the PIPEFITTERS' ASSOCIATION, LOCAL UNION 597, in part and the plaintiff LAWRENCE B. MALONE in whole. Defendant's motion is GRANTED on Malone's failure-to-promote claim. IT IS SO ORDERED.

Blanche M. Manning, U.S.D.J.

Dated: 3-12-02